IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

MICHAEL D. MANNERY,

        Plaintiff,

        v.

LOC P. DO, *et al.*,

        Defendants.

Civil No. 22-cv-4451 (RBK/AMD)

**OPINION**

**KUGLER**, United States District Judge:

    This matter comes before the Court upon Defendant Allstate Insurance Company's Motion to Dismiss the Third and Fourth Counts of Plaintiff's Amended Complaint for Failure to State a Claim (ECF No. 6). For the reasons set forth below, Allstate's Motion is **GRANTED**.

    **I.**    **BACKGROUND**

    On October 15, 2021, Plaintiff was operating a motorcycle when he collided with a vehicle operated by former defendant Loc P. Do. (*Id.* at Count 1 ¶ 1, 3). The vehicle operated by Do was insured by Progressive Insurance Company with liability limits of $25,000/$50,000. (*Id.* at Count 3 ¶ 2). To compensate Plaintiff for the collision, Progressive offered to tender its full $25,000 policy. (*Id.* at Count 3 ¶ 4).

    Although not detailed in the Complaint, it appears to be undisputed that, at the time of the collision, Plaintiff's motorcycle was insured under a Motorcycle Policy with Allstate with UIM coverage up to $15,000, less than the amount Plaintiff has already been provided by Progressive. (Pl. Resp. 1). Plaintiff also had an Automobile Policy with Allstate, which covered Plaintiff's two automobiles and which had UIM limits of $100,000/$300,000. (Pl. Resp. at 1). Plaintiff

1

submitted a claim for UIM benefits under the Automobile Policy, but the claim has not been resolved. (*Id.* at Count 3 ¶ 5). Plaintiff alleges that he "continues to be unreasonably denied a claim for . . . payment of benefits." (*Id.* at Count 4 ¶ 5). Plaintiff brings claims against Allstate for breach of contract (Third Count) and bad faith under the New Jersey Insurance Fair Conduct Act, N.J.S.A. 17:29BB-1, the New Jersey Unfair Claim and Settlement Practices Act, N.J.S.A. 17:29B-4, and the New Jersey Administrative Code, N.J.A.C 11:2-17.1 (Fourth Count).[1]

## II. LEGAL STANDARD

When deciding a motion to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), the court limits its review to the face of the complaint. *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 835 (3d Cir. 2011). The Court must accept as true all well-pleaded factual allegations and must construe them in the light most favorable to the plaintiff. *Phillips v. Cnty of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). In other words, a complaint is sufficient if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The inquiry is not whether [a plaintiff] will ultimately prevail in a trial on the merits, but whether [he or she] should be afforded an opportunity to offer evidence in support of [his or her] claims." *In re Rockefeller Ctr. Prop., Inc.*, 311 F.3d 198, 215 (3d Cir. 2002). However, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

---

[1] The Complaint also brought two claims against Loc P. Do and Kimphuong T. Nguyen. These defendants, and the claims against them, were later voluntarily dismissed, so that only the claims against Allstate remain. (*See* ECF Nos. 14–15).

To determine whether a complaint is plausible on its face, courts conduct a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id*. (quoting *Iqbal*, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint cannot survive where a court can infer only that a claim is merely possible rather than plausible. *Id*.

"When deciding a motion to dismiss, a court typically does not consider matters outside the pleadings. However, a court may consider documents that are 'integral to or explicitly relied upon in the complaint' or any 'undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" *Mills v. Ethicon, Inc.*, 406 F. Supp. 3d 363, 372 (D.N.J. 2019) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999)); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F. 3d 256, 260 (3d Cir. 2006) (noting that, when "evaluating a motion to dismiss, [a court] may consider . . . any matters incorporated by reference or integral to the claim"). "Reliance on these types of documents does not convert a motion to dismiss into a motion for summary judgment," since a "plaintiff obviously is on notice of the contents [of] the document, and the need for a chance to refute evidence is greatly diminished." *Mills*, 406 F. Supp. at 372 (quoting *Pension*

*Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196–97 (3d Cir. 1993) (internal quotations omitted)).

### III.   DISCUSSION

In moving to dismiss, Defendant argues the UIM provision in Plaintiff's Automobile Policy unambiguously does not provide coverage in this instance, and therefore Plaintiff cannot state a plausible claim for breach of contract. (ECF No. 6 ("Def. Mot.") at 1–2). Further, Defendant argues that because the contract does not provide coverage here, there is no plausible claim of bad faith. (*Id.* at 2). In response, Plaintiff argues the provision is ambiguous, and that ambiguities in a contract for insurance must be read to be consistent with the reasonable expectations of the insured under New Jersey law. (ECF No. 7 ("Pl. Resp.") at 4–5). The crux of the parties' dispute is a disagreement as to whether the "step-down clause" in the Automobile Policy, which decreases the amount of UIM coverage in the case of an accident involving a motor vehicle that is covered by another insurance policy, precludes UIM coverage in this case.

As a preliminary matter, the Court notes that both parties attach and rely on documents not included in Plaintiff's Complaint, leaving it to the Court to determine whether these documents may be considered without converting the Motion to Dismiss into a motion for summary judgment in accordance with Federal Rule of Civil Procedure 12(d). *See In re Rockefeller Center Properties, Inc. Securities Litigation*, 184 F.3d 280, 287–88 (3d Cir. 1999).

First, both parties attached a version of the Automobile Policy as exhibits to their briefs (Def. Mot. Ex. B; Pl. Resp. Ex. B). Neither party disputes the accuracy or authenticity of the copies of the Automobile Policy, and the two copies appear to be identical, with the exception of the different dates listed at the top of the first page of each. The Automobile Policy is "integral to or explicitly relied upon in the complaint" and the claims against Defendant "are based on"

alleged breaches of the Policy's terms. *See Mills*, 406 F. Supp. 3d at 372. Therefore, "plaintiff obviously is on notice of the contents [of] the document, and the need for a chance to refute evidence is greatly diminished." *Id.* We conclude that we may consider the contents of the Automobile Policy without converting the Motion to Dismiss into a motion for summary judgment.

Second, Plaintiff attaches his Allstate Motorcycle Policy (Pl. Resp. Ex. D); an email from Progressive Insurance Company tendering its policy limit of $25,000 (*Id.* Ex. E); and multiple communications between Plaintiff's Counsel and Allstate's adjuster regarding the claim at issue in this case (*Id.* Exs. F, G, H, I, J, K). As Defendant points out in its Reply brief (ECF No. 8 ("Def. Rep." at 11–12), these exhibits are used as evidence of facts that were not mentioned in the Complaint. These documents are not "integral to or explicitly relied upon in the complaint." *See Mills*, 406 F. Supp. 3d at 372. Therefore, if we were to consider these documents, we would need to convert the Motion to Dismiss into a motion for summary judgment. We decline to do so. *See Meyer v. Delaware Valley Lift Truck, Inc.*, 392 F.Supp.3d 483, 489 n. 2 ("[T]he decision to convert is entirely discretionary—the Court may simply disregard the extraneous materials and treat the motion to dismiss as a motion to dismiss.").

### A. Third Count: Breach of Contract

Plaintiff alleges Defendant breached the terms of the Automobile Policy by failing to provide UIM coverage. Defendant argues no UIM coverage was owed because of application of the step-down clause in the UIM provision. The step-down clause provides:

> If the named insured . . . is in, on, getting into or out of a motor vehicle of any type owned by that person . . . which is not an insured auto and is insured for similar coverage under another insurance policy, or for which similar coverage is available, then the limits of liability for this coverage will be the mandatory minimum limits for this coverage specified by the laws of New Jersey.

5

(Def. Mot. at 8; Pl. Resp. at 7). The mandatory minimum coverage required by New Jersey law is $15,000/$30,000. An "insured auto" is defined earlier in the Automobile Policy as "an auto [the policy owner] own[s] which is described on the Policy Declarations . . . ." (Def. Mot. at 10).

The effect of the Automobile Policy's step-down clause can be summarized as follows: if the insured is in an accident while using a motor vehicle that is *not* insured under the Automobile Policy but *is* insured under some other insurance policy, then the UIM coverage decreases from the general limits of $100,000/$300,000 to $15,000/$30,000, which is less than the coverage Plaintiff was already offered by Progressive. Because Plaintiff has already received $25,000 in compensation from Progressive, if the step-down clause applies here, Plaintiff is not entitled to further UIM coverage from Defendant. The question before us, then, is whether the step-down clause applies.

Under New Jersey law, the interpretation of an insurance policy is a "question of law." *Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic Med.*, 210 N.J. 597, 605 (2012). Where an insurance policy's language is "clear and unambiguous," a court must enforce it according to the "plain and ordinary meaning" of the policy's language. *Stafford v. Scottsdale Ins. Co.*, 416 F. App'x 191, 194 (3d Cir. 2010) (citing *Voorhees v. Preferred Mut. Ins. Co.*, 128 N.J. 165 (1992). If the language of an insurance policy is ambiguous, then it "should be construed liberally in [the insured's] favor to the end that coverage is afforded 'to the full extent that any fair interpretation will allow.'" *Longobardi v. Chubb Ins. Co. of New Jersey*, 121 N.J. 530, 582 (1990). "Consistent with that principle, courts also have endeavored to interpret insurance contracts to accord with the objectively reasonable expectations of the insured." *Doto v. Russo*, 140 N.J. 544, 556 (1995). "However, an insured's reasonable expectations only matter

6

when the court finds the relevant language ambiguous." *Katchen v. Government Employees Insurance Company*, 457 N.J.Super. 600, 607 (App. Div. 2019).

In short, in interpreting an insurance policy under New Jersey law, we must first determine whether the insurance policy's language is "clear and unambiguous." *Stafford*, 416 F. App'x at 194. If we find it unambiguous, we must enforce it according to its "plain and ordinary meaning." *Id.* If we find it ambiguous, we then proceed to determine the insured's "objectively reasonable expectations" and enforce the contract according to those reasonable expectations. *Doto*, 140 N.J. at 556.

Plaintiff argues the step-down clause is ambiguous because "it is not clear that the step-down provision applies to motorcycles." (Pl. Resp. at 9). Plaintiff argues that, although the step-down clause states that it applies to any "motor vehicle" owned by the insured that is not an insured auto, the definition of "motor vehicle" within the UIM section is ambiguous and does not clearly include motorcycles. The UIM section defines "motor vehicle" as any "land motor vehicle" other than (a) a vehicle designed for use off public roads, (b) a vehicle operated on rails, (c) a vehicle used as a residence, or (d) a recreational vehicle (such as an all-terrain vehicle, snowmobile, dune buggy, golf cart, etc.). (Pl. Resp. at 7–8). Plaintiff provides no further explanation as to why he believes this definition is ambiguous. Motorcycles do not fall under any of these exceptions to the definition of "motor vehicle." A motorcycle is not an off-road vehicle, does not operate on rails, cannot be used as a residence, and is not a recreational vehicle of the type listed as examples. Because Plaintiff makes no attempt to explain why this definition is ambiguous, we are not persuaded by Plaintiff's argument that the definition of "motor vehicle" does not clearly include motorcycles and conclude that the step-down clause is unambiguous.

Plaintiff next argues the UIM provision cannot be enforced as written because Plaintiff

7

had a reasonable expectation of coverage and the policy's language must be so clear as to overcome that expectation. (Pl. Resp. at 8–9). A similar argument was made, and rejected, in *Katchen v. Farm Family Mut. Ins. Co.*, 457 N.J. Super. 600 (App. Div. 2019), in which the Appellate Division considered the question of whether "an insurer may exclude UIM coverage for an accident involving a vehicle owned by the insured but not covered under the subject policy." *Id.* at 603. In *Katchen*, the plaintiff had suffered injuries in a motor vehicle accident while riding his motorcycle, which was insured by Rider Insurance Company. The plaintiff sought UIM coverage under an auto policy provided by GEICO. GEICO's auto policy included a UIM exclusion provision, which excluded "coverage for 'bodily injury sustained by an insured while occupying a motor vehicle owned by an insured and not described in the [d]eclarations. . . .'" *Id.* at 604 (emphasis in original). The plaintiff argued that he reasonably expected UIM coverage because the policy's declaration page did not warn of the exclusion. The court rejected that argument on the grounds that "an insured's reasonable expectations only matter when the court finds the relevant language ambiguous" and because the court did not find the language ambiguous, it "need not consider plaintiff's claimed reasonable expectations." *Id.* at 607.

  Here, Plaintiff argues that he had a reasonable expectation of coverage because "[i]t is not unusual for more than one policy to provide UIM benefits for the same accident," because the policy declarations page did not warn Plaintiff of any exclusions from UIM coverage, and because Plaintiff was the named insured under both the Motorcycle and the Automobile policies. (Pl. Resp. at 5, 8–9). Plaintiff argues that, "[i]n the absence of clarity with regard to the step-down provision, the contract interpretation should favor the Plaintiff insured's expectations and afford him UIM coverage through his automobile policy." (Pl. Resp. at 8). However, as we have

8

already concluded that the language of the step-down clause is unambiguous, Plaintiff's reasonable expectations are irrelevant.

We find the step-down clause clearly and unambiguously applies here, where Plaintiff sought UIM coverage for injuries suffered while riding a motorcycle that was not an insured auto under the Automobile Policy and was insured under a different policy. Because the step-down clause applies, Defendant properly denied Plaintiff's claim for UIM coverage under the Automobile Policy. Therefore, Plaintiff's claim for breach of contract must be dismissed.

### B. Fourth Count: Bad Faith

Plaintiff urges that, despite the absence of a plausible breach of contract claim, his claim of bad faith can survive the Motion to Dismiss. In support of this, Plaintiff draws on facts not pleaded in the Complaint supported by a string of exhibits that were not attached to or referenced by the Complaint. As discussed above, we cannot consider these new exhibits without converting the Motion to a motion for summary judgment, and we decline to do so. The allegations in Count Four of the Complaint relate solely to Defendant's alleged bad faith in "engag[ing] in an unreasonable delay or unreasonable denial of the plaintiff's claim for payment of benefits." (Compl. Count Four ¶ 6). Because we find Plaintiff was not entitled to benefits under the Automobile Policy's UIM provision, the Defendant was not unreasonable in denying those benefits. Therefore, Plaintiff's claim of bad faith must be dismissed.

### IV. CONCLUSION

For the reasons expressed above, Defendant Allstate's Motion to Dismiss the Third and Fourth Counts of Plaintiff's Amended Complaint is **GRANTED**. An Order follows.

Dated: 2/27/2023                                                                            /s/ Robert B. Kugler
                                                                                                          ROBERT B. KUGLER
                                                                                                          United States District Judge